IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXACTECH, INC., JAMES G. BINCH, ALBERT H. BURSTEIN, W. ANDREW KRUSEN, JR., WILLIAM B. LOCANDER, DAVID W. PETTY, WILLIAM PETTY, RICHARD C. SMITH, FERN S. WATTS, OSTEON HOLDINGS, L.P., OSTEON MERGER SUB, INC., and TPG CAPITAL,<br><br>Defendants. | Case No. _____<br><br>CLASS REPRESENTATION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 23, 2017 (the "Proposed Transaction"), pursuant to which Exactech, Inc. ("Exactech" or the "Company") will be taken private by TPG Capital and its affiliates.

2. On October 22, 2017, Exactech's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Original Merger Agreement") with Osteon Holdings, L.P. ("Parent") and Osteon Merger Sub, Inc. ("Merger Sub," and together with Parent and TPG Capital, "TPG"). Pursuant to the terms of the Original Merger Agreement, shareholders of Exactech would receive $42.00 in cash for each share of Exactech stock they own.

3.      In connection with the Original Merger Agreement, the Company's founders and certain members of the Company's management (the "Rollover Shareholders") entered into a rollover and voting agreement with Parent (the "Original Rollover Agreement"), pursuant to which the Rollover Shareholders agreed to vote all of their shares of Company common stock, aggregating approximately 23.0% of the issued and outstanding Company common stock, in favor of the Proposed Transaction, and agreed to exchange a portion of their shares for new equity securities in Parent.

4.      On November 7, 2017, the Company received a proposal from a private equity firm and certain of its affiliates ("Party A") to acquire 100% of the Company's outstanding common stock for $49.00 per share in cash -- *$7.00 per share higher than the merger consideration being offered by TPG.* Party A reaffirmed its proposal on November 14, 2017 and again on December 1, 2017.

5.      On December 3, 2017, the Company entered into an amendment to the Original Merger Agreement with Parent and Merger Sub (the "Amended Merger Agreement"), pursuant to which shareholders of Exactech would now receive $49.25 in cash for each share of Exactech stock they own.

6.      In connection with the Amended Merger Agreement, the parties to the Original Rollover Agreement entered into an amendment to the Original Rollover Agreement (the "Amended Rollover Agreement") pursuant to which the Rollover Shareholders agreed to contribute to Parent an aggregate amount of 2,711,584 shares of Company common stock they currently own,[1] representing approximately 18.8% of the outstanding Company common stock,

---

[1] The Rollover Shareholders currently own approximately 3,637,851 shares of Company common stock.

for equity securities of Parent.

7. On December 4, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. Defendants also filed a Rule 13E-3 Transaction Statement in connection with the Proposed Transaction.

8. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.[2] However, as set forth herein, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

10. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

---

[2] According to the Merger Agreement, approval of the Proposed Transaction is conditioned upon the receipt of the affirmative vote of the holders of a majority of all the votes entitled to be cast by all shares of Company common stock – apparently including the Rollover Shareholders' shares.

**PARTIES**

12. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Exactech common stock.

13. Defendant Exactech is a Florida corporation and maintains its principal executive offices at 2320 NW 66th Court, Gainesville, Florida 32653. Exactech's common stock is traded on the NasdaqGS under the ticker symbol "EXAC."

14. Defendant James G. Binch ("Binch") is a director of the Company.

15. Defendant Albert H. Burstein ("Burnstein") has served as a director of the Company since March 1996.

16. Defendant W. Andrew Krusen, Jr. ("Krusen") has served as a director of the Company since May 2015.

17. Defendant William B. Locander ("Locander") has served as a director of the Company since May 2003.

18. Defendant David W. Petty ("D. Petty") has served as a director, President, and Chief Executive Officer ("CEO") of the Company since December 2007.

19. Defendant William Petty ("W. Petty") is a founder of Exactech, and serves as the Company's Executive Chairman and Chairman of the Board.

20. Defendant Richard C. Smith ("Smith") is a director of the Company.

21. Defendant Fern S. Watts ("Watts") is a director of the Company.

22. The defendants identified in paragraphs 14 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant Parent is a Delaware limited partnership and a party to the Original Merger Agreement and Amended Merger Agreement.

24. Defendant Merger Sub is Florida corporation, a wholly-owned subsidiary of Parent, and a party to the Original Merger Agreement and Amended Merger Agreement.

25. Defendant TPG Capital is the global private equity platform of alternative asset firm TPG. Parent and Merger Sub are affiliates of TPG Capital.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Exactech (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

27. This action is properly maintainable as a class action.

28. The Class is so numerous that joinder of all members is impracticable. As of October 18, 2017, there were 14,529,710 shares of Exactech common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

29. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

30. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

32. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

33. Exactech develops and markets orthopaedic implant devices, related surgical instruments, and biologic materials and services to hospitals and physicians.

34. The Company manufactures many of its orthopaedic devices at its Gainesville, Florida facility.

35. Exactech's orthopaedic products are used in the restoration of bones and joints that have deteriorated as a result of injury or diseases such as arthritis.

36. Exactech markets its products in the United States, in addition to more than thirty markets in Europe, Latin America, Asia, and the Pacific.

37. On October 22, 2017, the Individual Defendants caused the Company to enter into the Original Merger Agreement with Parent and Merger Sub.

38. Pursuant to the terms of the Original Merger Agreement, shareholders of Exactech would receive $42.00 in cash for each share of Exactech stock they own.

39. In connection with the Original Merger Agreement, the Rollover Shareholders entered into the Original Rollover Agreement with Parent, pursuant to which the Rollover Shareholders agreed to vote all of their shares of Company common stock, aggregating approximately 23.0% of the issued and outstanding Company common stock, in favor of the Proposed Transaction, and agreed to exchange a portion of their shares for new equity securities

6

in Parent.

40. On November 7, 2017, the Company received a proposal from Party A, a private equity firm and certain of its affiliates, to acquire 100% of the Company's outstanding common stock for $49.00 per share in cash -- $7.00 per share higher than the merger consideration being offered by TPG.

41. Party A reaffirmed its proposal on November 14, 2017 and again on December 1, 2017.

42. On December 3, 2017, the Company entered into the Amended Merger Agreement with Parent and Merger Sub, pursuant to which shareholders of Exactech would now receive $49.25 in cash for each share of Exactech stock they own.

43. In connection with the Amended Merger Agreement, the parties to the Original Rollover Agreement entered into the Amended Rollover Agreement, pursuant to which the Rollover Shareholders agreed to contribute to Parent an aggregate amount of 2,711,584 shares of Company common stock they currently own,[3] representing approximately 18.8% of the outstanding Company common stock, for equity securities of Parent.

44. Approval of the Proposed Transaction is conditioned upon the receipt of the affirmative vote of the holders of a majority of all the votes entitled to be cast by all shares of Company common stock – apparently including the Rollover Shareholders' shares.

45. On December 4, 2017, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. Defendants also filed a Rule 13E-3 Transaction Statement in connection with the Proposed Transaction.

---

[3] The Rollover Shareholders currently own approximately 3,637,851 shares of Company common stock.

46. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction. However, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

47. First, the Proxy Statement omits material information regarding Exactech's financial projections and the analyses performed by Exactech's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").

48. With respect to the Company's financial projections, the Proxy Statement fails to disclose: net earnings; depreciation and amortization; interest and financing costs; one-time, non-recurring expenses; currency gains and losses; income tax expense; net operating profits; taxes; capital expenditures; changes in net working capital; stock-based compensation expense; the segment-specific financial projections for the Company for years 2017 through 2023; a reconciliation of all non-GAAP to GAAP metrics; and the "upside case."

49. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the calculated unlevered free cash flows used by J.P. Morgan in the analysis and constituent line items; (ii) the range of terminal values of the Company; and (iii) the inputs and assumptions underlying the range of discount rates of 8.5% to 9.5%.

50. With respect to J.P. Morgan's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by J.P. Morgan in the analysis.

51. With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by J.P. Morgan in the analysis.

52. The disclosure of projected financial information is material because it provides

stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Board of Directors; Fairness of the Merger; (iii) Opinion of Financial Advisor; and (iv) Projected Financial Information.

54. Second, the Proxy Statement omits material information regarding potential conflicts of interest of J.P. Morgan.

55. For example, the Proxy Statement fails to disclose the amount of compensation J.P. Morgan has received for the past services it provided for Exactech, TPG, and their affiliates.

56. The Proxy Statement also fails to disclose the amount of compensation J.P. Morgan currently receives (and previously has received) for its commercial banking affiliate acting as an agent bank and lender under outstanding credit facilities of the Company, Parent, and related portfolio companies.

57. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background

of the Merger; (ii) Reasons for the Merger; Recommendation of the Board of Directors; Fairness of the Merger; and (iii) Opinion of Financial Advisor.

59. Third, the Proxy Statement provides the following as one of the bases for which the Rollover Shareholders "believe[] that the merger is substantively and procedurally fair to the Company's unaffiliated stockholders": "the transaction is structured so that approval of at least *a majority of unaffiliated shareholders is required*." (Emphasis added). However, the Merger Agreement defines "Company Shareholder Approval" as the "receipt of the affirmative vote of the holders of *a majority of all the votes entitled to be cast by all shares of Company Common Stock* at the Company Shareholders Meeting approving the Merger," and the remainder of the Proxy Statement appears to be consistent with that definition. (Emphasis added).

60. The aforementioned is inconsistent and misleading, and must be corrected prior to the stockholder vote on the Proposed Transaction.

61. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Exactech**

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Exactech is liable as the issuer of these statements.

64. The Proxy Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

65. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

66. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

67. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

68. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

69. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and TPG

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants and TPG acted as controlling persons of Exactech within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Exactech and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly,

11

the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

72. Each of the Individual Defendants and TPG was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

74. TPG also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

75. By virtue of the foregoing, the Individual Defendants and TPG violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants and TPG had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 22, 2017  **CULLIN O'BRIEN LAW, P.A.**

By: _s/Cullin O'Brien_
Cullin A. O'Brien
Fla. Bar. No. 0597341
6541 N.E. 21st Way
Ft. Lauderdale, FL 33308
(561) 676-5370

*Local Counsel for Plaintiff*

**OF COUNSEL**:

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

*Attorneys for Plaintiff*